UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KEITH C. TOLBERT,                              :
    Plaintiff,                             :
                                           :
    v.                                     :        No. 22-cv-1182
                                           :
PENNSYLVANIA DEPARTMENT                         :
OF CORRECTIONS, *et al*.                        :
    Defendants.                            :

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                    **April 4, 2022**
**United States District Judge**


Plaintiff Keith C. Tolbert, an inmate currently confined at SCI Somerset, filed this action

alleging a violation of his civil rights based on events that occurred while he was confined at SCI

Phoenix.  Named as Defendants are the Pennsylvania Department of Corrections, Superintendent

Kevin Sorber, Deputy Bradley, Lt. Morgan, Sgt. Eskew, Correctional Officer Baldwin, Dr.

Stephen Weiner, and Deputy Mandy Sipple.  Tolbert also seeks leave to proceed *in forma*

*pauperis*.  For the following reasons, the Complaint will be dismissed in part with prejudice and

in part without prejudice, and certain claims will be permitted to proceed.  Tolbert will be

granted the option to file an amended complaint as set forth more fully below.

## I.      FACTUAL ALLEGATIONS[1]

Tolbert alleges that on March 20, 2020, he was threatened by inmates "J. Clancy" and "E.

Burley" while using the telephone.  (Compl. (ECF No. 2) at 5.)  According to Tolbert, Clancy

---

[1]      The allegations set forth in this Memorandum are taken from Tolbert's Complaint and the
public dockets, of which the Court may take judicial notice.  *See Buck v. Hampton Twp. Sch.
Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  The Court adopts the pagination supplied by the
CM/ECF docketing system.

stated, "Come to my cell when you done on that phone so I can fuck you up!" and Burley added, "I'm going to kill you when you done!" (*Id.*)  When he finished with his telephone call, Tolbert reported to Defendant Baldwin that Clancy and Burley threatened him, and requested that Defendant Baldwin "open my door so I can lock-in." (*Id.*)  However, Tolbert was stopped by Burley before he was able to lock-in to his cell. (*Id.*)  After Burley stated, "You ready to die!" Tolbert replied, "Please leave me alone." (*Id.*)  Tolbert claims that he walked away to go into his cell, but Burley was already inside the cell and began to assault Tolbert. (*Id.*)

Tolbert contends that when Defendant Baldwin arrived at Tolbert's cell, he instructed the inmates to come out of the cell, but did not "secure the area or act to protect . . . [Tolbert] from further assault." (*Id.*)  According to Tolbert, "[t]his allow[ed] . . . Burley to chase me down in the day room to assault me.  I feared for my life and retreated and pleaded for . . . [Defendant] Baldwin to help me.  Then . . . Clancy swung at me and I fell to the floor hitting my head; I blacked out." (*Id.*)  Tolbert contends that Clancy and Burley "brutally beat" him "until Sgt. Eskew maced us." (*Id.*)

With respect to Defendants Sorber, Bradley, and Morgan, Tolbert contends that they "falsified the incident report/misconduct to charge me with fighting contrary to CCTV evidence, and they place[d] unnecessary administrative separations on me and transfer[red] me out the prison further away from my family." (*Id.*)  Tolbert further avers that "Dr. Stephen Weiner, Medical Director and Deputy Mandy Sipple, DSCS denied me [the] same medical treatment as given to CO Baldwin and Sgt. Eskew" in violation of the Fourteenth Amendment's Equal Protection Clause. (*Id.*)

Tolbert notes that prior to the incident, he underwent "major facial and head trauma surgery on November 28, 2019," and that he "fell on [his] head" on December 11, 2019,

suffering multiple concussions.  (*Id.*)  Additionally, the injuries Tolbert "sustained related to the events was multiple bruises, contusions, lacerations on [his] face, bruised/cracked ribs, chronic pain, acute pain, headaches/migraines, loss of memory, blurry vision in right eye, and two black eyes."  (*Id.*)  Tolbert also experienced shortness of breath from broken ribs and "o/c spray in lungs, swelling in head, blackouts, nausea and vomiting, concussions/TBI, broken jaw, and pain in lower back/spine, and ankle."  (*Id.*)

Tolbert filed grievances related to the March 2020 incident.  (*Id.* at 6-7.)  He asserts that he was "in solitary confinement and it is my belief my grievances were being delayed and misdirected to sabotage the exhaustion of my grievances relating to these events."  (*Id.* at 7.)  Tolbert claims that he was in administrative segregation from March 20, 2020, until July 20, 2020.  (*Id.*)  Tolbert seeks monetary damages, as well as injunctive relief in the form of "ordering PADOC[2] to remove administrative separations which are unnecessary and transfer me back to my region SCI-Chester to be back near my two sons, and my family which is essential to my rehabilitation and correctional needs."  (*Id.*)

## II.    STANDARD OF REVIEW

The Court grants Tolbert leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

---

[2]      Pennsylvania Department of Corrections
[3]      As Tolbert is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Tolbert is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.      Claims against the Pennsylvania Department of Corrections

Tolbert names as a Defendant the Pennsylvania Department of Corrections.  It is well-established that states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is not considered a person subject to suit under § 1983. *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983.").  Accordingly, the Court will dismiss Tolbert's § 1983 claims against the Pennsylvania Department of Corrections with prejudice.

### B.      Claims against Correctional Officer Baldwin

The Court understands Tolbert to be alleging that his Eighth Amendment rights were violated by Defendant Baldwin during the events of March 20, 2020 when Defendant Baldwin failed to protect Tolbert's safety.  (*See* Compl. at 5.)  The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes.  *See Rhodes v. Chapman*, 452 U.S. 337,

344-46 (1981).[4]  Under the Eighth Amendment, prison officials have a duty to provide humane

conditions of confinement, including adequate food, clothing, shelter, medical care, and must

take reasonable measures to guarantee the safety of the inmates.  *See Farmer v. Brennan*, 511

U.S. 825, 832-33 (1994) (internal quotation and citation omitted).  Courts have found that prison

officials have a duty "to protect prisoners from violence at the hands of other prisoners."  *Id.* at

833 (internal quotations omitted).  "Being violently assaulted in prison is simply 'not part of the

penalty that criminal offenders pay for their offenses against society.'"  *Id.* at 834 (quoting

*Rhodes*, 452 U.S. at 347).

For a failure to protect claim against a prison official to be plausible, a plaintiff must

allege: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm;

(2) the prison official acted with deliberate indifference to that substantial risk of serious harm;

and (3) the official's deliberate indifference caused harm.  *See Farmer*, 511 U.S. at 834;

*Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x

785, 790 (3d Cir. 2019) (*per curiam*).  Deliberate indifference in the context of a failure to

protect claim requires the plaintiff to allege plausibly that the defendant prison officials "must

actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison

officials] should have been aware."  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

"However, subjective knowledge on the part of the official can be proved by circumstantial

---

4       The Eighth Amendment's "cruel and unusual punishments" clause applies when an
inmate has been convicted of and sentenced for his crimes.  *Bistrian v. Levi*, 696 F.3d 352, 367
(3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).
Tolbert does not allege whether he was in custody at SCI Phoenix as a pretrial detainee or a
sentenced inmate at the time of the relevant events.  (*See generally* Compl.)  A review of
publicly available federal and state court dockets reveals, however, that Tolbert was sentenced
on third degree murder and other charges in 2015 and, thus, was confined as a convicted prisoner
in 2020.  *See Commonwealth v. Tolbert*, CP-51-CR-0013923-2013 (C.P. Phila.).

evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id.* (citing *Farmer*, 511 U.S. at 844).

Tolbert alleges that Clancy and Burley threatened to hurt him while he was using the telephone, that he reported the incident to Defendant Baldwin, and that he requested Defendant Baldwin open the door so that he could "lock-in" to his cell. (Compl. at 5.) Tolbert further claims that Burley threatened him again, went to Tolbert's cell, and assaulted Tolbert when Tolbert arrived at his cell. (*Id.*) Tolbert asserts that when Defendant Baldwin arrived at Tolbert's cell, he instructed the inmates to come out of the cell, but did not "secure the area or act to protect . . . [Tolbert] from further assault." (*Id.*) According to Tolbert, "[t]his allow[ed] . . . Burley to chase me down in the day room to assault me." (*Id.*) Tolbert claims that he feared for his life, he retreated and pleaded for Defendant Baldwin to help him, but that he was "brutally beaten" by Clancy and Burley. (*Id.*) Accepting Tolbert's allegations as true, as the Court is obligated to do at this stage of the litigation, Tolbert will be permitted to proceed on his failure to protect claims against Defendant Baldwin.

### C.    Claims against Superintendent Kevin Sorber, Deputy Bradley, and Lt. Morgan

Tolbert's allegations against Defendants Sorber, Deputy Bradley, and Lieutenant Morgan are sparse. He claims that these Defendants "falsified the incident report/misconduct to charge me with fighting contrary to CCTV evidence, and they place[d] unnecessary administrative separations on me and transfer[red] me out the prison further away from my family." (Compl. at 5.) The Court construes this allegation as an attempt to set forth Fourteenth Amendment due process claims.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold

matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). When considering whether a liberty interest is implicated, a Court's focus must be on the "the nature of the deprivation" experienced by the prisoner. *Sandin v. Conner*, 515 U.S. 472, 481 (1995). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . [b]ut these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84 (internal citations omitted). As the Supreme Court has explained, "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Id.* at 485. "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin*, 515 U.S. at 486)).

"When considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (*per curiam*) (citing *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir. 2000)). In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486. The United States Court of Appeals for the Third Circuit has held that "[p]lacement in administrative segregation for days or months at a time . . . do[es] not implicate a protected liberty interest."

*Arango v. Winstead*, 352 F. App'x 664, 666 (3d Cir. 2009) (*per curiam*) (citing *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002)).

Here, Tolbert alleges that he was held in administrative segregation for four months.  (*See* Compl. at 7.)  That is not the type of atypical or significant hardship sufficient to trigger due process concerns.  *See Smith*, 293 F.3d at 654 (finding no liberty interest triggered by seven-month placement in disciplinary confinement); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that "exposure to the conditions of administrative custody for periods as long as 15 months falls within the expected parameters of the sentence imposed [. . .] by a court of law" and does not constitute a due process violation (quotation omitted)); *see also Williams v. Armstrong*, 566 F. App'x 106, 108 (3d Cir. 2014) (*per curiam*) (concluding prisoner failed to allege liberty interest based on four-month placement in the RHU); *Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (*per curiam*) (determining that no liberty interest was triggered by 90-day placement in disciplinary segregation).  Since Tolbert's four-month placement in administrative segregation is not sufficient to establish the kind of "atypical" deprivation of prison life that would trigger due process protections, these due process claims against Defendants Sorber, Bradley, and Morgan do not give rise to a plausible basis for a constitutional claim.  Accordingly, the due process claims based on Tolbert's placement in administrative segregation after the events of March 20, 2020, will be dismissed with prejudice.

Furthermore, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."  *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*).  This is because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."  *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith*,

9

293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Thus, to state a plausible claim based on the filing of the reports, Tolbert must allege that he was denied an "opportunity to confront and challenge the allegedly perjured testimony offered in support of the misconduct reports." *See Smith*, 293 F.3d at 654. Tolbert does not allege that he was denied an opportunity to challenge the allegedly false misconduct report. Rather, Tolbert claims that he "submitted initial grievance, appeal to Facility Manager, then the PADOC Central Office (SOIGA) and was denied at every level." (Compl. at 6.) He also alleges that "it is my belief my grievances were being delayed and misdirected to sabotage the exhaustion of my grievances relating to these events. (*Id.* at 7.) Nonetheless, Tolbert had the opportunity to challenge and confront the allegedly false report, satisfying the procedural due process requirements. *See Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."). Accordingly, Tolbert's due process claims against Defendants Sorber, Bradley, and Morgan based on the allegedly false misconduct report will be dismissed with prejudice.

### D.    Claims against Sgt. Eskew

Tolbert names Sgt. Eskew as a Defendant to this action, but offers few allegations against him. Without further explanation, Tolbert claims that he was beaten by Clancy and Burley "until Sgt. Eskew maced us." (Compl. at 5.) To the extent Tolbert seeks to present a claim of excessive force against Defendant Eskew for the use of mace, he has not alleged sufficient facts to proceed against Defendant Eskew at this time.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'[]; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (*per curiam*); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a *per se* constitutional violation).

Tolbert has not alleged facts from which it could be plausibly inferred that Defendant Eskew maliciously and sadistically applied force to cause harm rather than in a good-faith effort to maintain or restore discipline. As pled, Tolbert has not alleged sufficient facts to state a claim for excessive force against Defendant Eskew. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts.").

11

Accordingly, Tolbert's excessive force claims against Defendant Eskew will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii).

### E.       Claims against Dr. Stephen Weiner and Deputy Mandy Sipple

Tolbert alleges that Defendants Weiner and Sipple violated his Fourteenth Amendment Equal Protection rights when they "denied" Tolbert the "same medical treatment as given to CO Baldwin and Sgt. Eskew." (Compl. at 5.) Tolbert fails to allege further details about this claim. Tolbert's generalized allegations are not sufficient to state an equal protection claim against Defendants Weiner and Sipple.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Where the plaintiff does not claim membership in a protected class, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "Under the rational basis standard, any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Aulisio v. Chiampi*, 765 F. App'x 760, 765 (3d Cir. 2019) (*per curiam*).

12

Tolbert's Complaint fails to state a claim against Defendants Wiener and Sipple under either equal protection theory. First, Tolbert fails to allege a class-based equal protection claim because he does not allege that he is a member of a protected class. (*See* Compl. at 5.) Moreover, courts have held that merely being a prisoner does not create a protected class of individuals. *See Wilson v. Jin*, 698 F. App'x 667, 672 (3d Cir. 2017) (*per curiam*) (citing *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001)); *Sabetpour v. Martinez*, No. 19-10030, 2021 WL 3542689, at *6 (D.N.J. Aug. 10, 2021) ("Prison inmates as such are not a protected class.").

Second, Tolbert fails to plausibly allege a non-class-based equal protection claim. While he claims that Defendants Weiner and Sipple treated him differently than Correctional Officer Baldwin and Sargent Eskew, Tolbert does not allege how these individuals, who Tolbert clearly identifies as prison staff members, were similarly situated to Tolbert. *See Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"); *Beitler v. City of Allentown*, No. 22-104, 2022 WL 768151, at *8 (E.D. Pa. Mar. 14, 2022) ("We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently."). Further, Tolbert does not allege that the Defendants acted intentionally and that there was no rational basis for the difference in treatment. *See Aulisio*, 765 F. App'x at 765 (affirming dismissal of equal protection claim where inmate failed to "show that the adverse treatment he experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were

13

irrational") (internal citations and quotations omitted).  Here, Tolbert merely alleges that

Defendants Weiner and Sipple violated his equal protection rights when they "denied" him the

"same medical treatment as given to CO Baldwin and Sgt. Eskew."  (Compl. at 5.)  This

conclusory allegation does not plausibly state a claim for a violation of the Equal Protection

Clause.  *See Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (holding that

general allegations that plaintiff was treated "less favorably" are not sufficient); *Harris v.

Centurion*, No. 21-739, 2021 WL 5177431, at *4 (D. Del. Nov. 8, 2021) (dismissing as frivolous

inmate's equal protection claim because allegations were conclusory and inmate could not state a

plausible equal protection claim).  Accordingly, the Court will dismiss Tolbert's equal protection

claims without prejudice.  Tolbert will be permitted the option to file an amended complaint if he

is able to cure the defects the Court has identified in his equal protection claim.

**F.      Request for Transfer**

It is well-settled that prisoners have no inherent constitutional right to placement in any

particular prison, to any particular security classification, or to any particular housing

assignment.  *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution

does not give rise to liberty interest in avoiding transfers to more adverse conditions of

confinement); *see also Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no

justifiable expectation that he will be incarcerated in any particular prison within a State.");

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) ("A state has broad

authority to confine and inmate in any of its institutions.").  Accordingly, to the extent Tolbert

seeks relief in the form of a transfer to a different prison, his claims are dismissed with prejudice.

**IV.    CONCLUSION**

As set forth more fully above, Tolbert's § 1983 claims against the Pennsylvania Department of Corrections, his due process claims against Defendants Sorber, Bradley, and Morgan, and his claims seeking transfer to a different prison, are dismissed with prejudice because they are not plausible.  Further, the Court concludes that amendment of these claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile").  Because the Court cannot say at this time that Tolbert cannot cure the defects in his excessive force claim against Defendant Eskew or his equal protection claims against Defendants Wiener and Sipple, he will be granted the option of filing an amended complaint to assert a plausible basis for these claims.

The Court is prepared to direct service of the Complaint on Tolbert's failure to protect claim against Defendant Baldwin.  Tolbert may notify the Court that he wishes to proceed on this claim only.  If Tolbert chooses not to file an amended complaint, the Court will direct service of the Complaint on Defendant Baldwin.  An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**
