UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH C. TOLBERT,<br>　　　　　Plaintiff, | :<br>:<br>: |
| v. | :　　No. 2:22-cv-01182 |
| | : |
| CORRECTIONAL OFFICER BALDWIN,<br>and LT MORGAN,<br>　　　　　Defendants. | :<br>:<br>: |

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 120 - Granted in part, Denied in part**
**Plaintiff's Motion for Sanctions, ECF No. 135 – Granted in part**

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　　　　　　August 13, 2024
**United States District Judge**

I.　　INTRODUCTION

　　This case involves a prisoner's claims that a corrections officer failed to protect him from an assault by other inmates and that a second corrections officer filed a false misconduct report against him in retaliation. The corrections officers have filed a motion for summary judgment. For the reasons set forth below, the motion is denied as to the failure to protect claim and granted as to the retaliation claim.

II.　　BACKGROUND

　　A.　　**Undisputed Facts**[1]

---

[1]　　The undisputed facts are taken from Defendants' Statement of Undisputed Facts, *see* ECF No. 120-1, that have been verified by review of the sources cited therein, *see, e.g.* First Tolbert Dep., ECF No. 120-3; Second Tolbert Dep., ECF No. 120-4, and compared against Tolbert's Response in Opposition thereto, *see* ECF No. 146. The undisputed facts also include portions of Tolbert's deposition testimony that Defendants have not disputed with any evidence. These facts are indicated by citation to Tolbert's deposition testimony.

On March 20, 2020, Plaintiff Keith C. Tolbert was an inmate at the State Correctional Institution at Phoenix ("SCI Phoenix"). At approximately 7:15 p.m., Tolbert was threatened[2] by inmates J. Clancy and E. Burley ("the inmates")[3] while using the telephone on JA-Block. When Tolbert finished his phone call, he informed Defendant Baldwin, a corrections officer who was standing at the officer's desk next to the telephones, that the inmates threatened him. At the time, Tolbert was still "reeling" from head and facial surgery less than four months prior as well as a fall while in the infirmary. *See* First Tolbert Dep. 22:7-19. Baldwin knew Tolbert had suffered a bad injury, had emergency surgery, had recently been released from the infirmary, and was still recovering from his injuries. *See id.* 42:19 – 45:9. After informing Baldwin of the threats, Tolbert asked Baldwin to open his cell door so he could lock-in. Baldwin then opened Tolbert's cell door by pushing a button at the officer's desk.

From the officer's desk to Tolbert's cell is "about 20 to 30 steps."[4] On the way to his cell, Tolbert was stopped by Burley, who was now[5] wearing black gloves. According to Tolbert, "[w]henever an inmate puts on black gloves that means that he's trying to assassinate. It's, like, almost, like, a planned hit." *See id.* 23:4-7. Burley blocked Tolbert from entering his cell. Another inmate approached to try to diffuse the situation, but Burley was not interested and began tightening his gloves and growing increasingly aggressive. *See id.* 26:3-17. Tolbert lost sight of Burley for a brief moment and took the opportunity to go in his cell to lock in.

---

[2]   One of the inmates threatened to kill Tolbert and the other said he wanted Tolbert to go in his cell and fight him. *See* First Tolbert Dep. 14:13-16.
[3]   Clancy and Burley are "big guys." *See* First Tolbert Dep. 11:12-19. Clancy is "about 6'3, 6'4, maybe 250, 260 muscle." *Id.* 10:1-5. "Burley is also about 6'4, 6'5 as well. He's a little more slender built, but he's still a big guy." *Id.* 14:12-14.
[4]   *See* First Tolbert Dep. 21:20-24.
[5]   Burley was not wearing gloves when he first threatened Tolbert. *See* First Tolbert Dep. 23:7-13.

Unbeknownst to Tolbert, Burley was already inside Tolbert's cell, where Burley started assaulting Tolbert. Tolbert did not know how long the assault was going on in his cell.

Baldwin arrived at Tolbert's cell, opened the cell door wide, and ordered Burley and Tolbert to come out. Burley did not comply, but Tolbert ran out. Burley then followed, chasing Tolbert through the day room and assaulting him. Clancy joined in the chase and assault of Tolbert. The inmates continued to assault Tolbert, punching and kicking him dozens of times in the head, face, ribs, back, and body, as he was trying to get away from them. Baldwin followed them and was assaulted by Burley. Burley knocked Baldwin to the ground and punched him repeatedly in the head, face, and chest. Clancy assaulted another corrections officer who entered the pod, knocking her to the ground. Approximately twenty-five (25) seconds after the incident spilled into the day room,[6] Baldwin deployed his oleoresin capsicum spray. About ninety (90) seconds later, other correctional officers responded and were able to secure the area. Tolbert, who was injured, was then taken to the Security Observation Unit ("SOU") for observation after the assault. While in the SOU, Tolbert told the guards about what happened, and that Baldwin could have prevented everything. *See* First Tolbert Dep. 39:21 – 40:4. Defendant Morgan, a corrections officer at SCI Phoenix, was not one of the guards in the SOU. *See id.* 40:12-13.

Morgan issued Tolbert a misconduct for fighting two days after the incident. Tolbert did not know or speak with Morgan before he filed the charge. After the first misconduct charge was dismissed, Morgan filed another misconduct against Tolbert for fighting. This charge was also subsequently dismissed, with prejudice.

---

[6] A video from SCI Phoenix's surveillance system is in evidence. *See* Video, ECF No. 120-2. The video begins when Baldwin is standing outside of Tolbert's cell. The video shows the day room and captures the incident once it spilled out into the day room.

### B. Procedural History

Tolbert initiated the above-captioned action on March 24, 2022, against eight (8) defendants. *See* ECF No. 2. The Complaint was dismissed on screening on all except Tolbert's failure to protect claim against Baldwin. *See* ECF Nos. 5-6. To the extent the claims were dismissed without prejudice, Tolbert was granted leave to file an Amended Complaint. He filed an Amended Complaint on May 2, 2022, against Baldwin, Morgan, and Dr. Stephen Weiner. *See* ECF No. 7. After litigation on several motions, the Court granted Tolbert's request to file a Second Amended Complaint on November 30, 2022. ECF Nos. 55-57. The Second Amended Complaint raised three counts: (I) Eighth Amendment failure to protect against Baldwin; (II) Eighth Amendment deliberate indifference against Weiner; and (III) First Amendment retaliation against Morgan. *See* Sec. Am. Compl., ECF No. 57. Baldwin and Morgan answered the Second Amended Complaint, *see* ECF No. 59, but Weiner moved to dismiss, *see* ECF No. 58. The claim against Weiner was subsequently dismissed and the action proceeded to discovery as to the claims against Baldwin and Morgan. *See* ECF Nos. 75-77.

On March 28, 2023, a scheduling order was issued setting a deadline of April 28, 2023, for service of all interrogatories and requests for production, a deadline of June 28, 2023, for completion of all fact and expert discovery, and a deadline of July 28, 2023, for the filing of dispositive motions. *See* ECF No. 77. By Order dated May 3, 2023, the deadline for serving interrogatories and requests for production was extended until May 26, 2023. *See* ECF No. 91. By Order dated July 10, 2023, the deadline for completion of all fact and expert discovery was extended until August 10, 2023, and the deadline for filing dispositive motions was extended until September 11, 2023. *See* ECF No. 110 (stating also that "[a[ll other deadlines set forth in

the Order dated March 28, 2023, see ECF No. 77, and the Order dated May 3, 2023, see ECF No. 91, remain in full force and effect.").

Numerous motions and orders were filed in this case, not all of which are mentioned herein. Of note, Tolbert filed a Motion for Additional Discovery dated July 31, 2023. *See* ECF No. 115. Believing that his discovery request was late, Tolbert asserted that he needed the additional discovery to support his own motion for summary judgment and to support his opposition. *See id.* ¶ 4. Tolbert explained that he needed discovery showing that JA-Block was an inherently dangerous housing unit as evidence of Baldwin's reckless disregard for his safety by not immediately summoning help when Tolbert reported that he had been threatened. *See id.* ¶¶ 5, 7, 16. Tolbert asked "Baldwin to produce all documents showing housing unit 'JA-Block' classification status, classification requirements, and electronically stored tracking information related to inmate placement on JA-Block at S.C.I. Phoenix." *Id.* ¶ 6.

On August 3, 2023, the day after the Motion for Additional Discovery was docketed, this Court issued an Order finding that because the Motion was "essentially a discovery request being made for the first time, and in the absence of any indication that Defendants have refused to provide the requested discovery, . . . Plaintiff's Motion for Additional Discovery, ECF No. 115, is construed as a request for production of documents and is DISMISSED without prejudice." *See* ECF No. 116. The Order further stated: "Defendants are directed to respond directly to Plaintiff." *Id.* ¶ 2. The Order reminded the parties that the deadline for completion of all fact and expert discovery was August 10, 2023, and the deadline for filing dispositive motions was September 11, 2023. *See id.* ¶ 3.

Currently pending is a Motion for Sanctions dated March 10, 2024, from Tolbert relating to the Motion for Additional Discovery dated July 31, 2023, and the Order dated August 3, 2023,

directing Defendants to respond to the same. *See* Mot. Sanctions, ECF No. 135. Tolbert, asserting that Defendants completely failed to respond to his discovery request in violation of the Order, seeks sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure in the form of an order declaring the averments in the Amended Complaint at paragraphs 16-18[7] are deemed admitted and a finding that Baldwin had actual knowledge Tolbert was in sufficiently serious danger, thereby proving his culpable state of mind. *See id.* Tolbert argues that he made several attempts to contact Defendants by letter in an attempt to resolve the matter, all of which have been ignored. *See id.* Since more than six months had passed with no response, Tolbert objects to additional time for Defendants to comply. *See id.* Defendants failed to respond to Tolbert's Motion for Sanctions.

Also pending[8] is Tolbert's Motion to Compel Production of Documents dated September 6, 2023. *See* Mot. Compel, ECF No. 121. This motion relates to a request for production of documents from Baldwin and Morgan that Tolbert made on or about August 5, 2023.[9] *See* ECF No. 117. He had requested production of any and all documents related to the incident on March 20, 2020, as well as any and all documents showing who was responsible for preserving the

---

[7]  These paragraphs state:
   16.   Once Plaintiff had Defendant Baldwin's attention, Plaintiff reported in detail the direct threats that had just been made and requested for Defendant Baldwin to open JA-14 so that Plaintiff could lock himself inside for his own safety.
   17.   Defendant Baldwin did open JA-14, but failed to immediately separate Plaintiff in accord with DOC policy to investigate Plaintiff's clams.
   18.   Despite having just been told of the direct threats against Plaintiff, Defendant Baldwin did not immediately contact his supervisor or offer Plaintiff protective custody in accord with DOC policy.
Am. Compl. ¶¶ 16-18.
[8]  Motions from Tolbert to appoint counsel and to compel confiscated discovery, which will be addressed in an order accompanying this Opinion, are also pending. *See* ECF Nos. 128, 136.
[9]  The request, which is dated August 5, 2023, was mailed directly to Defendants. A copy of the same was sent to the Court for docketing on August 8, 2023, and was docketed on August 11, 2023.

CCTV video surveillance footage and the policy, custom, and procedure for the same. *See id.* Tolbert asserts that he never received a response to his request. *See* Mot. Compel. Baldwin and Morgan oppose the Motion to Compel, arguing that the request for production of documents was untimely. *See* Opp. Mot. Compel, ECF No. 123.

Finally, Baldwin and Morgan have filed a Motion for Summary Judgment. *See* ECF No. 120. Tolbert opposes the Motion. *See* ECF Nos. 145-146.

### III. LEGAL STANDARDS

#### A. Rule 37 Sanctions – Review of Applicable Law

"[U]nder Rule 37, the imposition of sanctions for abuse of discovery under Fed. R. Civ. Pro. 37 is a matter within the discretion of the trial court." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (internal quotations omitted). Rule 37 provides:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>   (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>   (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>   (iii) striking pleadings in whole or in part;
>   (iv) staying further proceedings until the order is obeyed;
>   (v) dismissing the action or proceeding in whole or in part;
>   (vi) rendering a default judgment against the disobedient party; or
>   (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). The Third Circuit Court of Appeals has "laid out three factors district courts must consider when contemplating Rule 37 sanctions: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such

conduct by others in the future.'" *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). "A dispositive sanction is warranted only where 'the non-responsible party's case is severely impaired because it lacked the information that was not produced.'" *GN Netcom, Inc.*, 930 F.3d at 82 (quoting *Bull v. UPS*, 665 F.3d 68, 83 (3d Cir. 2012).

      **B.**      **Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must

consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

    **C.**    **Section 1983 – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

    **D.**    **Eighth Amendment (Failure to Protect) - Review of Applicable Law**

Prison administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S.

825, 834 (1994). An Eighth Amendment claim for failure to prevent harm has two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *See id.* (internal citations omitted). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must [also] plead facts that show . . . the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds, Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Under the first element, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the second element, "the state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Merely negligent conduct is insufficient." *Freeman v. Miller*, 615 F. App'x 72, 76 (3d Cir. 2015) (citing *Farmer*, 511 U.S. at 835). "In light of *Farmer*, [the Third Circuit Court of Appeals] adopted a subjective knowledge standard to establish deliberate indifference, requiring a showing that prison officials actually knew of and disregarded constitutional violations." *Thomas v. Tice*, 948 F.3d 133, 138-39 (3d Cir. 2020). A defendant's knowledge can be proven by circumstantial evidence that the risk was so obvious the official must have known. *See id.*

    E.  **First Amendment Retaliation – Review of Applicable Law**

"To establish a claim of retaliation under the First Amendment, [the plaintiff] must show that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action." *Freeman v. Dep't of Corr.*, 447 F. App'x 385, 387-88 (3d Cir. 2011) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). "To make out a viable retaliation claim, the alleged retaliatory action must be

sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Bullock v. Buck*, 611 F. App'x 744, 747 (3d Cir. 2015) (internal citations and quotations omitted). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to show that the same disciplinary action would have been taken even in the absence of protected activity. *See Rauser*, 241 F.3d at 333.

## IV. ANALYSIS

### A. Tolbert's request for Rule 37 sanctions is granted in part.

Tolbert's Motion for Sanctions relates to the Motion for Additional Discovery dated July 31, 2023, and the Order dated August 3, 2023, directing Defendants to respond to the same. *See* Mot. Sanctions. Tolbert's Motion for Additional Discovery asked, *inter alia*, for "Baldwin to produce all documents showing housing unit 'JA-Block' classification status, classification requirements, and electronically stored tracking information related to inmate placement on JA-Block at S.C.I. Phoenix." *See* ECF No. 115 at ¶ 6. Defendants, who failed to respond to Tolbert's Motion for Sanctions, do not dispute Tolbert's contention that they completely failed to respond to his discovery request despite this Court's Order directing that they do so. Accordingly, Defendants failed to comply with a Court Order and sanctions may be issued pursuant to Rule 37. *See* Fed. R. Civ. P. 37(b)(2)(A). This Court therefore considers the three factors outlined by the Third Circuit Court of Appeals in determining what, if any, sanctions should be issued.

First, the Court finds that Defendants are wholly at fault for their complete failure to comply with the Order and/or to produce the requested discovery. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 921 (3d Cir. 1992) ("[E]vidence of bad faith can be found in the defendants' total failure to respond to plaintiffs' requests for documents."). Tolbert made numerous attempts to secure the discovery before seeking sanctions, all to no avail. Even if Tolbert's Motion for Additional Discovery, which was filed less than thirty (30) days prior to the close of discovery, was untimely,[10] Defendants did not object on timeliness grounds.[11] Further, Tolbert explained why his request was late and why he needed the discovery to support and/or oppose a summary judgment motion. Rule 56 contemplates the scenario where a party may not have sufficient facts to oppose a motion for summary judgment and gives the court the power to, *inter alia*, defer considering such motion, deny it, or allow time for the party to take discovery. *See* Fed. R. Civ. P. 56(d). *See also* Fed. R. Civ. P. 56(e). The Order directing Defendants to respond to the discovery request "directly to Plaintiff" and then reminding them of the upcoming discovery deadline, implicitly extended the discovery deadline to allow Tolbert to obtain additional discovery. *See ACLU v. Gonzales*, 237 F.R.D. 120, 124-25 (E.D. Pa. 2006) (explaining that the court, in ordering the plaintiffs to serve interrogatories even though discovery ended eight days later, "anticipated the likely possibility that it would take more than one week for plaintiffs to craft and serve their contention interrogatories in lieu of the

---

[10]   *See* Fed. R. Civ. P. 33(b)(2) (providing that the "responding party must serve its answers and any objections within 30 days after being served with the interrogatories"); Fed. R. Civ. P. 34(b)(2) (providing that the "party to whom the request [for production of documents] is directed must respond in writing within 30 days after being served")

[11]   *See* Fed. R. Civ. P. 33(b)(2) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); Fed. R. Civ. P. 34(b)(4) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.")

deposition" and "implicitly allowed plaintiffs to serve their contention interrogatories in lieu of the deposition within a reasonable time after the order was entered").  Moreover, this is not the only time Defendants have failed to timely respond to discovery requests and/or provided incomplete discovery.[12]  The first factor therefore supports the issuance of sanctions.

Additionally, this is not a case in which Tolbert failed to seek discovery until the last moment.  To the contrary, Tolbert has actively sought discovery throughout the pendency of this case.  *See, e.g.* ECF Nos. 61, 72, 80, 94 (presenting discovery requests and/or Motions to Compel dated January 2, 2023, February 28, 2023, March 24, 2023, and May 6, 2023).  In fact, Tolbert first sought information regarding the custody levels of Burley and Clancy on February 28, 2023.  *See* ECF Nos. 72, 80.  Although his motion to compel production of the same was initially dismissed as overly broad because it might unduly infringe upon the privacy rights of these inmates, the dismissal was without prejudice.  *See* ECF No. 91 (Order dated May 3, 2023).  Defendants therefore had notice that the discovery request may be renewed.

---

[12]   On April 6, 2023, Tolbert served separate interrogatories on Morgan and on Baldwin, but Defendants did not respond until more than thirty (30) days later on May 9, 2023.  *See* ECF No. 95.  Although Defendants' responses were untimely by only a day, their failure to abide by the Rules makes any suggestion that the *pro se* prisoner should be held to strict compliance with the Rules unpersuasive.
   On or about August 5, 2023, Tolbert made a request for production of documents from Baldwin and Morgan, but Defendants failed to respond or to make any objection until after Tolbert filed a Motion to Compel more than a month later and then only responded to the Motion to Compel to assert objections to timeliness.  *See* ECF Nos. 117, 121, 123.
   Tolbert repeatedly requested surveillance video of the incident on March 20, 2020, that was the subject of the complaint.  Tolbert requested the video of the entire incident, beginning when he was on the telephones and was threatened by the inmates.  By Order dated May 3, 2023, this Court denied as moot Tolbert's request to compel production of the "full video" based on Defendants' averment that it had been produced.  *See* ECF No. 91.  The video admitted as an exhibit to the Motion for Summary Judgment does not, however, appear to be a "full" video of the incident.  *See also* ECF No. 88 (suggesting that the video evidence, which does not show the entire incident complained of, is incomplete).  Rather, it begins with Baldwin already standing outside Tolbert's cell, with Burley and Tolbert already inside.

The second factor also supports sanctions as Tolbert is prejudiced by the failure of Defendants to provide discovery. The Court finds that the requested discovery ("classification status, classification requirements, and electronically stored tracking information related to inmate placement on JA-Block at S.C.I. Phoenix") is directly relevant to Tolbert's claims and to disproving any defense by Defendants. Tolbert, a *pro se* prisoner, is unable to obtain the requested discovery from alternate sources.

Third, although some degree of sanctions is necessary to prevent substantial unfairness to Tolbert, an order declaring that Baldwin had a sufficiently culpable state of mind and preventing him from challenging such facts at trial is unnecessary at this time.[13] Instead, a lesser sanction will prevent substantial unfairness to Tolbert and deter future violations by Defendants.

Rule 37 specifically allows this Court to enter an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." *See* Fed. R. Civ. P. 37(b)(2)(A)(i). Thus, to the extent Tolbert contends that he needs discovery pertaining to JA-Block's classification to show that JA-Block was an inherently dangerous housing unit to show Baldwin's deliberate indifference for not immediately reporting/investigating the threats, this Courts designates the following facts as established for purposes of the Motion for Summary Judgment: JA-Block was an inherently dangerous housing unit and Baldwin had actual knowledge of the same.

Although Tolbert asks that this Court declare the averments in the Amended Complaint at paragraphs 16-18 be deemed admitted, the allegations in these paragraphs are not dependent on the custody classification of the inmates. This request is therefore denied. Tolbert's objection to

---

[13] If Defendants fail to timely comply again or if Tolbert can establish continued prejudice after discovery is provided, this Court will entertain a request for spoliation sanctions.

giving Defendants more time to produce the discovery is also denied as unnecessary. Rather, Defendants will be directed to produce the requested discovery, without objection. This lesser sanction is sufficient to prevent substantial unfairness to Tolbert and to deter future violations by Defendants.

> **B.    Summary judgment is denied as to the Eighth Amendment failure to protect claim against Baldwin.**

Tolbert complains that Baldwin should have done more to protect Tolbert when he was first informed of the threats, should have immediately called the security office to have someone check out the threats, should have reported the threats to a supervisor as required by DOC policy, should have responded to Tolbert's cell more quickly, and should have done more to stop the assault both inside and outside of Tolbert's cell.

Defendants rely heavily on the video from SCI Phoenix's surveillance system to argue the absence of a dispute of material fact that Baldwin failed to protect Tolbert. Although this Court agrees that Baldwin did not act with deliberate indifference once the assault spilled out into the day room, as depicted in the video, the video is not informative as to whether Baldwin acted with deliberate indifference prior to the assault as it continued in the day room. The video begins when Baldwin was already standing outside Tolbert's cell. It does not show how long Baldwin was standing there prior to the assault spilling into the dayroom, or what, if any, action Baldwin took while at Tolbert's cell door, or how long it took Baldwin to get to Tolbert's cell, or the interaction between Burley and Tolbert outside his cell, etc. The video alone therefore fails to support Defendants' request for summary judgment.

Given Tolbert's report of specific threats to Baldwin, who did not report the threats to anyone and took no action other than to unlock Tolbert's cell; evidence that Burley had put on gloves after the threats purportedly showing his intent to fight; evidence that Burley stopped

15
081324

Tolbert from entering his cell and grew more aggressive while still outside the cell; evidence that this interaction was obvious enough and lasted long enough that another inmate had time to respond and make an attempt to diffuse the situation; evidence that Baldwin did not respond to Tolbert's cell until after Tolbert was already being assaulted inside; and evidence that Baldwin never entered Tolbert's cell in an attempt to stop the assault; there is a dispute of material fact as to whether Baldwin failed to protect Tolbert.  *See Young v. Quinlan*, 960 F.2d 351, 363 n.23 (3d Cir. 1992) (holding that although prison officials are not required to provide protective custody to every inmate who asserts he was assaulted or threatened,[14] "prison officials should, at a minimum, investigate each allegation of violence or threat of violence"); *Armstrong v. Suesser*, No. 17-265, 2018 U.S. Dist. LEXIS 135393, at *10-11 (W.D. Pa. Aug. 9, 2018) (concluding that the plaintiff's allegation the prison official did nothing between the plaintiff's request for transfer based on the verbal confrontation with a fellow inmate and the physical attack by that inmate three days later stated a claim for failure to protect, noting that an "inmate normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety" and that "prison officials should investigate each incident or threat of violence to determine if a request for protective custody is legitimate" (internal quotations omitted)).  A jury could find from this evidence, especially when coupled with Tolbert's vulnerable physical condition as a result of his recent release from the infirmary and the fact that JA-Block was an inherently dangerous housing unit, all of which Baldwin knew, that Baldwin was not merely negligent, but was deliberately indifferent to a substantial risk of serious harm to Tolbert.  *See Young*, 960 F.2d at 361-63 (holding that given the level of violence at the prison,

---

[14]    Although Tolbert only asked Baldwin to unlock his cell, Tolbert alleges that he would have accepted protective custody if he had known that was an option.  *See* Am. Compl. ¶ 19.

"the prison authorities could not have lightly dismissed [the plaintiff's] allegations as improbable"); *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (reasoning that a substantial risk under the Eighth Amendment includes "risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault'").

Baldwin's request for summary judgment on the Eighth Amendment failure to protect claim is denied.

    **C.**    **Summary judgment is granted in favor of Morgan on the First Amendment retaliation claim.**

Tolbert complains that Morgan issued him misconducts despite clear video footage showing that Tolbert was not fighting, but was trying to escape an assault. He further asserts Morgan spread a false narrative that Tolbert was the cause of the corrections officers being injured in the assault. However, even assuming Tolbert engaged in protected speech/conduct,[15] there is no evidence that the alleged retaliatory action was sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights. To the contrary, Tolbert testified that "[f]rom the very beginning, [he] already knew . . . they were going to be dummies and retaliate on [him]," *see* Second Tolbert Dep. 82:17-20, but he was not deterred from complaining about Baldwin. Also, both misconduct charges were dismissed. *See Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (holding that a "retaliatory disciplinary charge that is

---

[15]     Tolbert contends that Morgan acted in retaliation for Tolbert's statements blaming Baldwin for not preventing the assault, which is allegedly protected speech. However, Tolbert also surmises that Morgan had a personal vendetta against him in light of Tolbert's reputation of rubbing corrections officers the wrong way, *see* Second Tolbert Dep. 79:24 – 83:11, which is not protected activity.

later dismissed is insufficient to serve as the basis of a § 1983 action" (internal quotations omitted)).

Tolbert has also failed to produce any evidence that his protected speech/conduct was a substantial or motivating factor in Morgan's decision to issue the misconducts. Since the misconducts were issued for fighting on March 20, 2020, which is the same day as Tolbert's complaints about Baldwin, there is no unusually suggestive temporal proximity. There is also no pattern of antagonism because Tolbert did not know or speak to Morgan prior to the misconducts. Tolbert offers nothing more than his own supposition that Morgan acted in retaliation for Tolbert's statements blaming Baldwin for not preventing the assault. However, "[c]ourts have consistently rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive." *Williams v. Pa. Dep't of Corr.*, No. 1:18-cv-170 Erie, 2020 U.S. Dist. LEXIS 147698, at *37 (W.D. Pa. Aug. 14, 2020) (quoting *Bailey v. Lawler*, 2010 U.S. Dist. LEXIS 128282, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 Fed. Appx. 126 (3d Cir. 2014)). Tolbert's suggestion that Morgan issued a false misconduct based on his complaints about Baldwin is therefore insufficient to create a triable claim.

Moreover, even if Tolbert had made a prima facie case of retaliation, Morgan has shown that he would have taken the same disciplinary action even in the absence of Tolbert's complaints about Baldwin. The Deputy Superintendent for SCI Phoenix declared that, as to the fight on March 20, 2020, it was "standard procedure for Tolbert, Clancy, and Burley to receive misconducts." Wynder Decl., ¶¶ 5-6, ECF No. 120-5. It was "the policy at SCI Phoenix to issue misconducts to all inmates involved in a fight." *Id.* ¶ 2. Wynder explained this "allows for quicker process for the inmates to dispute the charges against them" and "[i]t is then up to the

Hearing Examiner to decide if the inmate deserves the misconduct for the incident." *Id.* ¶¶ 3-4. Although Tolbert disputes these statements, he offers nothing to support his contrary position to create a genuine dispute of fact. Notably too, the assault admittedly began inside Tolbert's cell, which the video surveillance did not cover. *Compare Cruz v. Giroux*, No. 17-175 (Erie), 2020 U.S. Dist. LEXIS 20790, at *17-18 (W.D. Pa. Feb. 5, 2020) (granting summary judgment in favor of the corrections officer for allegedly filing a false misconduct against the plaintiff for fighting because the plaintiff's admission to throwing a punch supplied the necessary 'quantum of evidence' needed to find that a misconduct charge was not retaliatory); *Burton v. Wetzel*, No. 1:16-CV-1953, 2017 U.S. Dist. LEXIS 158488, at *20-21 (M.D. Pa. Sep. 27, 2017) ("[I]t is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is 'some evidence' to support the decision.").

The Motion for Summary Judgment is therefore granted in favor of Morgan on Tolbert's First Amendment retaliation claim.

V.   **CONCLUSION**

For the reasons set forth herein, the request for sanctions pursuant to Rule 37 is granted in part because Defendants failed to comply with an Order directing that they respond to Tolbert's Motion for Additional Discovery. Defendants are at fault for their complete failure to comply with this Court's Order, Tolbert is prejudiced by their failure, and sanctions are necessary to prevent substantial unfairness to Tolbert and to deter future violations by Defendants. Accordingly, Defendants will be directed to provide the requested discovery, without objection. Additionally, for purposes of the Motion for Summary Judgment, this Courts designates the following fact as established: JA-Block was an inherently dangerous housing unit and that Baldwin had actual knowledge of the same.

Based on these facts and on evidence that, *inter alia*, Tolbert reported specific threats to Baldwin by the inmates, one of whom was subsequently seen possibly preparing for an assault, and Baldwin failed to report the threats or take any steps to protect Tolbert other than to unlock his cell, there is a genuine dispute of fact as to whether Baldwin was deliberately indifferent to a substantial risk of harm to Tolbert in violation of the Eighth Amendment.  Summary judgment on this claim is denied and it will be scheduled for trial.

Tolbert has failed to present any evidence to support his retaliation claim against Morgan.  The allegedly false misconducts, which were subsequently dismissed, were not adverse actions.  Also, there is no evidence connecting the misconducts to Tolbert's complaints against Baldwin, especially in the absence of an unusually suggestive temporal proximity or pattern of antagonism.  Summary judgment is therefore granted in favor of Morgan on the First Amendment retaliation claim.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge